**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**PORT OF SOUTH LOUISIANA**                          **CIVIL ACTION**


**VERSUS**                                           **NO: 11-3065 c/w 12-433**


**TRI-PARISH INDUSTRIES, INC., ET AL.**              **SECTION: "H"(3)**


**ORDER AND REASONS**


Before the Court are the following Motions: (1) Motion to Dismiss and for Partial Summary

Judgment filed by Defendants Tri-Parish Industries, Inc. ("TP Industries") and Charles L. Augustine

("Augustine") (R. Doc. 44); (2) Motion for Partial Summary Judgment filed by TP Industries and

Augustine (R. Doc. 71); (3) Motion for Summary Judgment filed by Defendant Tri-Parish Barge, Inc.

("TP Barge") (R. Doc. 79); (4) Motion to Dismiss or for Adverse Inference Due to Spoliation of

Evidence filed by TP Industries and Augustine (R. Doc. 75); (5) Motion to Dismiss or for Adverse

Inference Due to Spoliation of Evidence filed by TP Barge (R. Doc. 83); (6) Motion for Sanctions filed

by TP Industries and Augustine (R. Doc. 66).

The Motion to Dismiss and for Partial Summary Judgment filed by TP Industries and Augustine (R. Doc. 44) is GRANTED IN PART and DENIED IN PART.  The Motion for Partial Summary Judgment filed by TP Industries and Augustine (R. Doc. 71) is GRANTED IN PART and DENIED IN PART.  All claims against TP Industries and Augustine in his personal capacity are DISMISSED.  The claims against Augustine in his capacity as an alleged "alter ego" of TP Barge shall remain pending. The Motion for Summary Judgment filed by TP Barge (R. Doc. 79) is DENIED. All claims against TP Barge shall remain pending.  The Motions to Dismiss or for Adverse Inference Due to Spoliation of Evidence filed by TP Industries and Augustine (R. Doc. 75) is DENIED AS MOOT.  The Motion to Dismiss or for Adverse Inference Due to Spoliation of Evidence filed by TP Barge (R. Doc. 83), and the Motion for Sanctions filed by TP Industries and Augustine (R. Doc. 66), are DENIED.

## BACKGROUND

This maritime case arises from the failure to remove certain objects discovered beneath the bed of the Mississippi River, adjacent to a parcel of land on the riverbank (hereafter the "Batture Property").  The chain of title regarding the Batture Property is essential to understanding the instant dispute: Reserve Barge sold the Batture Property to Cargo Transfer on April 17, 1985, who in turn sold the Batture Property to TP Barge on May 11, 1988.  The next day, TP Barge sold the Batture Property to TP Industries.  In April 2009, Plaintiff Port of South—who operates a port along

the river—expropriated the Batture Property from TP Industries in order to construct a new dock known as a "finger pier."

In late 2010, Plaintiff's contractor discovered three objects buried in the riverbed adjacent to the Batture Property, which interfered with construction of the finger pier. Plaintiff excavated the objects and raised them to the surface in March 2011. One of the objects was a barge bearing the nameplate "CAPTAIN FRANKS." The other two objects comprised a dock that had split into two pieces.

Plaintiff incurred the cost of removing the objects and suffered damages due to the delay of its finger pier project. Plaintiff filed suit against Defendants on December 14, 2011, asserting a slew of federal and state law claims. (R. Doc. 1.) Specifically, Plaintiff claims that Defendants owned and controlled the objects discovered in the riverbed and negligently caused them to sink. (*Id.* at ¶10.) Plaintiff is no longer seeking to recover any costs associated with removing the broken dock. (R. Doc. 87-5 ¶1.)

Uncertain of this Court's subject matter jurisdiction, Plaintiff filed an identical action in Louisiana state court on December 15, 2011. (R. Doc. 61.) Defendants removed the state court suit, which was subsequently consolidated with the case *sub judice*. (*See* No. 12-433, Docs. 1; 8.)

TP Industries and Augustine collectively filed two Motions for Partial Summary Judgment, one of which also included a Motion to Dismiss (R. Docs. 44; 71), and TP Barge filed a Motion for Summary Judgment (R. Doc. 79). TP Industries and Augustine also filed a Motion to Dismiss or for

3

Adverse Inference due to Spoliation of Evidence (R. Doc. 75)—which TP Barge subsequently adopted (R. Doc. 83)—and a Motion for Sanctions (R. Doc. 66).  Plaintiff has opposed each Motion. (*See* R. Docs. 61; 87; 90; 85; 88; 84.)  TP Industries and Augustine filed replies with respect to their Motions.  (*See* R. Docs. 74; 100; 96; 98.)

## LEGAL STANDARD

I.   <u>Failure to State a Claim Upon Which Relief Can Be Granted—Fed. R. Civ. P. 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009).  The Court need not, however, accept as true legal conclusions couched as factual allegations.  *Iqbal*, 129 S. Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.  *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice.  *Iqbal*, 129 S. Ct. at 678 (quoting *Twombly*, 550 S. Ct. at 1955).  Rather, the complaint must contain enough factual allegations to

raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

II.     Summary Judgment—Fed. R. Civ. P. 56

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2012). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.

1995).  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion." *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

**LAW AND ANALYSIS**

I.     Motion to Dismiss and for Partial Summary Judgment filed by TP Industries and Augustine (R. Doc 44)

TP Industries and Augustine move to dismiss Plaintiff's claim under 33 U.S.C. § 409, 411, 412–415 (the "Federal Wreck Act") for failure to state a claim upon which relief can be granted, or alternatively for partial summary judgment dismissing such claim as a matter of law.  They also

move for summary judgment dismissing Plaintiff's claim under La. Rev. Stat. § 34:843 (the "Louisiana Wreck Act"), all claims asserted against TP Industries, and all claims asserted against Augustine in his capacity as the alleged "alter ego" of TP Industries.  The Court first addresses Plaintiff's claim under the Federal Wreck Act.

A. *Whether Plaintiff States a Cognizable Claim under the Federal Wreck Act*

TP Industries and Augustine argue that 33 U.S.C. § 409 does not provide a private right of action.  Alternatively, they argue that the CAPTAIN FRANKS did not constitute an obstruction to navigation, as required by Section 409.  Plaintiff counters that the jurisprudence establishes that private parties may sue under the Federal Wreck Act.  Alternatively, should this claim be dismissed, Plaintiff argues that this Court would no longer possess subject matter jurisdiction over the case *sub judice*.

i. *Whether Private Parties May Sue Under the Federal Wreck Act*

For the following reasons, the Court finds that the Federal Wreck Act, which is comprised of certain provisions of the Rivers and Harbors Appropriation Act of 1899 ("RHA"), does not support a private right of action and therefore dismisses Plaintiff's claim under Section 409.  Four sections of the Federal Wreck Act are relevant to this case.  "Section 409 specifically addresses the problem of obstructions to navigable waters caused by sunken vessels[,]" and imposes three affirmative duties on the owner, lessee, or operator of such vessels.  *See In re S. Scrap Material Co., LLC*, 541 F.3d 584, 589 (5th Cir. 2008); 33 U.S.C. § 409.  Section 413 vests the Department of Justice with

7

exclusive authority to enforce, *inter alia*, Section 409 and to "vigorously prosecute all offenders against the same." 33 U.S.C. § 413. "Sections 414 and 415 expressly authorize *the government* to remove vessels sunken in navigable waters and to recover removal costs when the owner" fails to remove the vessel in compliance with Section 409. *In re S. Scrap Material Co., LLC*, 541 F.3d at 589–90 (emphasis added); 33 U.S.C. §§ 414, 415. Section 414 authorizes removal when a navigable waterway has been obstructed by a sunken vessel for a certain amount of time whereas Section 415 permits immediate removal in emergency situations. 33 U.S.C. §§ 414(a), 415(a–b). Both Sections explicitly provide that the owner, lessee, or operator of the sunken vessel "shall be liable *to the United States*" for removal costs. 33 U.S.C. §§ 414(b) (emphasis added); 415(c) (emphasis added).

In *California v. Sierra Club*, 451 U.S. 287 (1981), the Supreme Court addressed whether Congress intended to create private rights under § 10 of the RHA, codified at 33 U.S.C. § 403. Applying the factors enumerated in *Cort v. Ash*, 422 U.S. 66, 95 (1975), the Court held that § 10 did not provide a private right of action. *Sierra Club*, 451 U.S. at 298. The Court focused exclusively on the text of § 10 and the RHA's legislative history. *Id.* at 298. Although *Sierra Club* only addressed § 10 of the RHA, the Fifth Circuit has applied the reasoning of *Sierra Club* to conclude that private actions may not be brought under § 13 of the RHA, codified at 33 U.S.C. § 407. *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1031 (5th Cir. 1985) (en banc). Recently, a federal district court in this State found the analysis in *Sierra Club* and *M/V TESTBANK* "equally

8

applicable" to the provision at issue in the instant case, 33 U.S.C. § 409, and dismissed a private claim under that Section.  *Dunham-Price Grp. v. Port Aggregates*, No. 05 CV 2214, 2006 WL 2112953, at **3–4 (W.D. La. July 26, 2006).  This Court agrees with the result in *Dunham-Price* and dismisses Plaintiff's claim under 33 U.S.C. § 409.

In ascertaining whether Congress intended to confer federal rights, this Court focuses primarily on the text of Section 409.  *See Sierra Club*, 451 U.S. at 294.  Similar to Section 403, Section 409 (§ 13 in the RHA) is merely a general proscription of certain activities; it does not "unmistakably focus on any particular class of beneficiaries" and as such "does not indicate an intent to provide for private rights of action."  *See id.*  Moreover, the enforcement provisions of Section 409—Sections 413–415—unequivocally reflect Congressional intent to limit actions under Section 409 to the federal government: Section 413 empowers the Department of Justice to enforce Section 409, and Sections 414 and 415 authorize only the government to remove vessels and recover associated costs from the owner.

Furthermore, the legislative history of the RHA does not suggest that Congress was concerned with the rights of individuals.  *Sierra Club*, 451 U.S. at 295.  Rather, "the legislative history supports the view that the Act was designed to benefit the public at large *by empowering the Federal Government* to exercise its authority over interstate commerce with respect to obstructions on navigable rivers."  *Id.* at 294–95 (emphasis added).

This Court "will not engraft a remedy on a statute, no matter how salutary, that Congress

9

did not intend to provide." *Id.* at 297.  Accordingly, Plaintiff's claim under Section 409 of the Federal Wreck Act is dismissed.

ii. *Whether this Court Retains Subject Matter Jurisdiction*

Having dismissed Plaintiff's claim under the Federal Wreck Act, Plaintiff argues that this Court no longer possesses subject matter jurisdiction over the removed case.  The Court disagrees. Even were this Court to find that no federal claims remained, dismissal for lack of subject matter jurisdiction would not be mandatory.

It is well settled in the Fifth Circuit that "pendent jurisdiction may continue even after the federal claims upon which jurisdiction is based have been dismissed or rendered moot." *Baker v. Farmers Elec. Coop., Inc.*, 34 F.3d 274, 283 (5th Cir. 1994) (citing *Hefner v. Alexander*, 779 F.2d 277, 281 (5th Cir.1985)); *see also* 28 U.S.C. § 1367(c) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim . . .  if . . . the district court has dismissed all claims over which it has original jurisdiction.") (emphasis added).  Indeed, the Supreme Court has recognized that "when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction . . . over pendent state-law claims." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

In deciding whether to continue exercising jurisdiction, "courts should use their discretion in a way that best serves the principles of economy, convenience, fairness, and comity." *Doddy v. OXY USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).  The instant matter has been pending in this Court

10

for approximately fourteen months and is set for trial in less than one month.  The parties have conducted extensive discovery and filed multiple dispositive motions.  Declining to exercise supplemental jurisdiction at this juncture would be unfair and is unnecessary.  Accordingly, the Court exercises its discretion and declines to remand.

B. *Whether TP Industries and Augustine are Entitled to Summary Judgment*

TP Industries and Augustine move for summary judgment dismissing Plaintiff's claim under the Louisiana Wreck Act.  They also seek summary judgment dismissing all claims asserted against TP Industries and against Augustine in his capacity as the alleged "alter ego" of TP Industries.  For the following reasons, the Motion is granted in part and denied in part.  Plaintiffs claim under the Louisiana Wreck Act is dismissed.  All claims against TP Industries are dismissed except Plaintiff's unjust enrichment claim—TP Industries and Augustine did not address such claim in this Motion.  TP Industries and Augustine did, however, seek dismissal of this claim in a subsequent Motion for Partial Summary Judgment (R. Doc. 71), which the Court addresses in Section II of this Order and Reasons.[1]

i. *Louisiana Wreck Act*

TP Industries and Augustine contend that Plaintiff failed to comply with a procedural requirement of the Louisiana Wreck Act, namely, Section A(1).  Plaintiff counters that this

---

[1] For the reasons set forth  in Section II, Plaintiff's unjust enrichment claim is dismissed.

procedural requirement is inapplicable under subsection B(2).  For the following reasons, the Court agrees with TP Industries and Augustine and dismisses Plaintiff's claim under the Louisiana Wreck Act.

Subsection A(1) requires the owner of a sunken vessel to present a plan for removal within thirty days after receipt of written notice by certified mail from the appropriate federal, state, or local governing authority (hereafter the "authority").  La. Rev. Stat. § 34:843(A)(1).  If the owner cannot be identified or located, the authority must publish a notice in the official journal of the parish in which the vessel is located.  *Id.*

Plaintiff does not dispute that it failed to send written notice to TP Industries and Augustine or publish a notice in the official journal of the parish in which the CAPTAIN FRANKS was discovered.  Rather, Plaintiff claims that it was not required to give such notice.  Under Subsection B(2), the authority need not provide notice under Subsection A(1) if the sunken vessel poses "immediate danger to life or property" and the owner of the vessel cannot be identified or located.  La. Rev. Stat. § 34:483(B)(2).  Plaintiff claims that the CAPTAIN FRANKS posed such a danger.  Plaintiff's argument, however, is unconvincing as he has failed to identify specific evidence in the record, which demonstrates that the CAPTAIN FRANKS—submerged as much as twelve feet below the river's bottom (R. Doc. 71, Ex. A., p. 118, lns. 23–25)—posed an *immediate* danger to life or property.

Even assuming *arguendo* the applicability of Section B(2), TP Industries and Augustine

12

would still be entitled to partial summary judgment.  By its terms, the Louisiana Wreck Act only applies to the owner of a sunken vessel.  As explained more fully *infra*, Plaintiff cannot carry his burden of proof to demonstrate that TP Industries or Augustine owned the CAPTAIN FRANKS.

### ii. Liability of TP Industries

TP Industries claims that it should be dismissed from the instant litigation unless Plaintiff can prove that TP Industries owned and controlled the CAPTAIN FRANKS.  TP Industries argues—and the Court agrees—that there is no genuine issue of material of fact with respect to this issue. Accordingly, all claims against TP Industries are dismissed, save for Plaintiff's allegation of unjust enrichment—such claim does not require Plaintiff to prove ownership or control.

The Court finds no genuine of material fact regarding TP Industries' alleged ownership or control of the CAPTAIN FRANKS.  The Act of Sale transferring the Batture Property from TP Barge to TP Industries shows that  nothing referred to as the "CAPTAIN FRANKS," nor any other movable item, was transferred in the sale.  (R. Doc. 44, Ex. C.)  Plaintiff concedes the same in its opposition memorandum. (R. Doc. 61.)  Plaintiff also concedes that it has failed to locate a writing that shows that TP Industries "ever owned, leased or operated the CAPTAIN FRANKS."  (*Id.* at n.2.)  In fact, Plaintiff's Rule 30(b)(6) representative admitted that Plaintiff does not know when the CAPTAIN FRANKS sunk, much less who owned it at the time it sunk.  (R. Doc. 74, Ex. A., p. 108, lns. 18–25.) Finally, Augustine—the sole director and shareholder of TP Industries—stated in his affidavit that TP Industries never owned or controlled any vessel or barge described as the CAPTAIN FRANKS.

13

(R. Doc. 44, Ex. B ¶¶8; 10.)  Given the foregoing, the Court concludes that there is no genuine issue for trial.

### iii. *Liability of Augustine as Alleged Alter Ego of TP Industries*

The "alter ego" doctrine allows courts to disregard the limited liability attendant to the corporate form and hold an individual shareholder personally liable for the debts of the corporation.  *See Charming Charlie, Inc. v. Perkins Rowe Assocs.*, 97 So. 3d 595, 598–99 (La. Ct. App. 1st Cir. July 10, 2012).  Thus, corporate liability is the *sine qua non* for piercing the corporate veil.

Here, Plaintiff cannot establish any liability on the part of TP Industries.  As explained in the previous subsection, there is no genuine issue of material fact as to whether TP Industries owned or controlled the CAPTAIN FRANKS.  Furthermore, as explained in the next Section of this Order and Reasons, Plaintiff's claim for unjust enrichment fails as a matter of law.  Thus, having dismissed all claims against TP Industries, the factual predicate for an alter ego claim no longer exists. Accordingly, such claim is dismissed.

II.   <u>Motion for Partial Summary Judgment filed by TP Industries and Augustine</u> (R. Doc. 71)

In this Motion, TP Industries and Augustine move for summary judgment on all remaining claims against them.  Specifically, they move to dismiss the claims against: (1) Augustine in his capacity as an alleged alter ego of TP Barge; (2) Augustine in his personal capacity; and against (3) TP Industries and Augustine under the doctrine of unjust enrichment.

For the following reasons, this Motion is granted in part and denied in part.  Plaintiff's

14

claims under the doctrine of unjust enrichment and against Augustine in his personal capacity are dismissed.  Plaintiff has adequately demonstrated, however, the existence of a genuine issue of material fact as to whether TP Barge operates as the alter ego of Augustine.  The factual predicate for this veil  piercing claim—namely, the liability of TP Barge—is discussed in Section III of this Order and Reasons.  Accordingly, Plaintiff's alter ego claim shall remaining pending.

A. *Unjust Enrichment*

TP Industries and Augustine contend that the summary judgment record does not support an unjust enrichment claim.  Plaintiff counters that the record shows TP Industries and Augustine knew that the CAPTAIN FRANKS and other obstructions were submerged in the Mississippi River yet nonetheless allowed Plaintiff to expropriate the Batture Property without warning.  As a result, Plaintiff paid more for the Batture Property than it should have, thereby unjustly enriching TP Industries and Augustine.  For the following reasons, the Court dismisses Plaintiff's claim for unjust enrichment.

Louisiana Civil Code Article 2298 provides that "the remedy of unjust enrichment is subsidiary in nature, and 'shall not be available if the law provides another remedy.'"  *Walters v. Medsouth Record Mgmt., LLC.*, 38 So. 3d 245, 246 (La. 2010) (per curiam) (quoting *Carriere v. Bank of Louisiana*, 702 So. 2d 648, 671 (La. 1996)); *see also* La. Civ. Code. art. 2298.  Thus, unjust enrichment is a remedy of "last resort" and is only available to fill a gap in the law.  *See Hall v. James*, 986 So. 3d 817, 820 (La. Ct. App. 2d Cir. June 4, 2008).  "[I]t is not the success or failure of

15

other causes of action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied." *Garber v. Badon & Ranier*, 981 So. 3d 92, 100 (La. Ct. App. 3rd Cir. Apr. 2, 2008) (emphasis in original).

In the instant case, the law provides Plaintiff with a remedy—a negligence action against the party responsible for abandoning the CAPTAIN FRANKS.  Indeed, Plaintiff explicitly alleges the negligence of Defendants in his Complaint.  (R. Doc. 1 ¶12(B); (D).)  Having so pleaded, the Court finds that Plaintiff may not assert a claim for unjust enrichment.  *See Walters*, 38 So. 3d at at 246 ("Having pled a delictual action, we find plaintiff is precluded from seeking to recover under unjust enrichment.") (citation omitted); *Gallant Invs., Ltd. v. Illinois Cent. R.R. Co.*, 7 So. 3d 12, 18 (La Ct. App. 1st Cir. Feb. 13, 2009) ("[W]e conclude that any equitable action for unjust enrichment is precluded by the availability of the unambiguously-pleaded delictual action.").

B. *Claims Against Augustine in his Personal Capacity*

The Court grants summary judgment and dismisses Plaintiff's claims against Augustine in his personal capacity for much the same reasons as it dismissed the claims against TP Industries in Section I(B)(ii) of this Order and Reasons.  The Court further notes that Plaintiff's Rule 30(b)(6) representative conceded that Plaintiff has no evidence that Augustine personally owned the CAPTAIN FRANKS (R. Doc. 93, Ex. A., p. 52, lns. 3–10; p.56, lns. 11–17) or that Augustine was negligent in causing the CAPTAIN FRANKS to sink (*id.* at p. 111–12, lns. 25–9).  In response, Plaintiff once again fails to identify any evidence in the summary judgment record creating a genuine issue

16

of material fact as to Augustine's personal ownership or control of the CAPTAIN FRANKS.

C. *Claims Against Augustine in his Capacity as Alleged Alter Ego of TP Barge*

Augustine contends that summary judgment should be granted and Plaintiff's remaining alter ego claims dismissed for two reasons. First, he argues that Plaintiff cannot prove that TP Barge ever owned or controlled the CAPTAIN FRANKS and therefore cannot establish the factual predicate for his veil piercing claim—the liability of TP Barge. In the alternative, assuming that Plaintiff could create a genuine issue of fact regarding TP Barge's liability, Augustine argues that no such issue is present regarding his alleged alter ego status. Plaintiff counters that it has identified evidence in the record to create a genuine issue for trial as to both TP Barge's liability and Augustine's alter ego status.

For the following reasons, the Court agrees with Plaintiff and denies summary judgment. Augustine's first contention—that TP Barge never owned or controlled the CAPTAIN FRANKS—is the subject of a Motion for Summary Judgment filed by TP Barge (R. Doc. 79), which the Court denies for the reasons set forth in Section III of this Order and Reasons. As to Augustine's second contention, the Court finds that Plaintiff has carried its burden of demonstrating the existence of a genuine issue for trial as to whether TP Barge operates as Augustine's alter ego.

Louisiana law generally treats corporations as "distinct legal entities, separate from the individuals who comprise them." *Riggins v. Dixie Shoring Co., Inc.*, 590 So. 2d 1164, 1167 (La. 1991). Thus, "unless directors or officers of a corporation purport to bind themselves individually,

17

they do not incur personal liability for the debts of a corporation." *Industrias Magromer Cueros Y Pielas S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 920 (5th Cir. 2002) (citing *Riggins*, 590 So. 2d at 1668–69). Louisiana law permits courts to pierce the corporate veil of limited liability, however, in exceptional circumstances. *Hollowell v. Orleans Reg'l Hosp.*, *LLC*, 217 F.3d 379, 385 (5th Cir. 2000). One such circumstance is where the corporation operates as the "alter ego" of a shareholder. *Riggins*, 590 So. 2d at 1168. In determining whether to apply the alter ego doctrine, the following factors are usually considered relevant:

> (1) commingling of corporate and shareholder funds; (2) failure to follow statutory formalities for incorporating and transacting corporate affairs; (3) undercapitalization; (4) failure to provide separate bank accounts and bookkeeping records; and (5) failure to hold regular shareholder and director meetings.

*Huard v. Shreveport Pirates, Inc.*, 147 F.3d 406, 410 (5th Cir. 1998) (citing *Riggins*, 590 So. 2d at 1168). These factors are merely illustrative, not exclusive—the totality of the circumstances is determinative. *See Riggins*, 590 So. 3d at 1168; *Hollowell*, 217 F.3d at 387; *Prsad v. Bullard*, 51 So. 3d 35, 40 (La. Ct. App. 5th Cir. Oct. 12, 2010). Thus, courts are free to consider additional factors. *Hollowell*, 217 F.3d at 387 (collecting examples of cases in which Louisiana courts considered more than the five *Riggins* factors).

Louisiana courts are hesitant to pierce the corporate veil in the absence of fraud, malfeasance, or criminal wrongdoing. *Riggins*, 590 So. 2d at 1169. Therefore, "[w]hen fraud has not been alleged, a plaintiff seeking to pierce the corporate veil bears a heavy burden of proof."

18

*Huard*, 147 F.3d at 410; *accord Hollowell*, 217 F.3d at 386.  In deciding the instant Motion, this Court is mindful that the alter ego determination is primarily one of fact and is therefore best made by the fact finder.  *See Hollowell*, 217 F.3d at 385; *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 695–96 (5th Cir. 1985) ("Although the evidence in the record does not all point in one direction . . . it was for the factfinder . . . to weigh the evidence and to determine, based on the totality of the evidence, whether an alter ego relationship existed.")

After viewing the evidence in a light most favorable to Plaintiff, the Court will not enter summary judgment in favor of Augustine. The Court has reviewed the summary judgment record and finds that the following creates a genuine issue of material fact as to whether TP Barge operates as Augustine's alter ego: *First*, on two separate occasions, TP Barge failed to file annual reports with the Secretary of State for three consecutive years, resulting in the revocation of its corporate charter each time (R. Doc. 87, Ex. 15); *Second*, Augustine (TP Barge's President) does not know whether TP Barge ever created a shareholder book or issued shares of stock (R. Doc. 98, Ex. 16, p. 43, lns. 6–14; p. 44, lns. 12–14), and TP Barge was unable to produce such records during discovery (*id.* at Ex. 29); *Third*, While Augustine insists that he owns a 10% interest in TP Barge (R. Doc. 44, Ex. B ¶4), TP Barge acknowledged that it cannot confirm the amount of shares held by Augustine or TP Barge's other shareholder, William Dupree (R. Doc. 87, Ex. 17); *Fourth*, TP Barge has no record of any annual meetings of its shareholders until 2006, eighteen years after it

incorporated;[2] furthermore, the meeting minutes that do exist are bare-bones and evidence a

perfunctory adherence to corporate formalities (*id.* at Ex. 18); *Fifth*, While the Secretary of State's

records show that TP Barge's domicile and mailing address is  405 Amelia St, Gretna, LA 70053 (R.

Doc. 84, Ex. 6), Augustine admitted in his deposition that TP Barge does not keep a regular office

at this address (R. Doc. 87, Ex. 21, p. 40, lns. 4–7; 21–24); *Sixth*, Augustine admitted in his

deposition that TP Barge does not conduct any business nor can he recall the last time TP Barge

ever conducted business (*id.* at Ex. 30, p. 27, lns. 10–19); *Seventh*, Augustine does not recall the

circumstances under which he and Mr. Dupree achieved officer positions in TP Barge, including

whether they were elected to such positions at a shareholder meeting (*id.* at Ex. 30, p. 29–31).

III.     Motion for Summary Judgment filed by TP Barge (R. Doc. 71)

         TP Barge moves for summary judgment dismissing all claims against it.  Specifically, it

contends no genuine issue of material fact exists as to whether TP Barge owned or controlled the

CAPTAIN FRANKS at the time that it sank.  Plaintiff contests this assertion.  For the following

reasons, the Motion is denied.

         The chain of title regarding the Batture Property is essential to understanding the instant

---

[2] TP Industries and Augustine attempt to explain the absence of such records by asserting that Mr. Dupree stated in his deposition that the meeting minutes for TP Barge were destroyed in the aftermath of Hurricane Katrina.  For this reason, they argue, Plaintiff withdrew its motion to compel discovery requests seeking those records.  While the record certainly indicates that Plaintiff withdrew such request (*see* R. Doc. 47), it does not indicate the reason for doing so.  Furthermore, TP Industries and Augustine fail to provide this Court with the relevant portion of Mr. Dupree's deposition.

Motion.  The parties do not dispute the following: (1) That Reserve Barge sold the Batture Property to Cargo Transfer on April 17, 1985 ; (2) That Cargo Transfer sold the Batture Property to TP Barge on May 11, 1988; (3) That TP Barge sold the Batture Property to TP Industries on May 12, 1988; (4) That Plaintiff filed a petition to expropriate the Batture Property on April 9, 2009.[3]  The parties do dispute, however, whether certain movables, including the CAPTAIN FRANKS, were transferred in any of these sales.  TP Barge contends that Reserve Barge did not sell the CAPTAIN FRANKS to Cargo Transfer, and alternatively that Cargo Transfer did not sell the CAPTAIN FRANKS to TP Barge. As the Court finds a genuine issue of material fact with respect to each contention, the Motion is denied.

     A. *Whether Reserve Barge Sold the CAPTAIN FRANKS to Cargo Transfer*

     TP Barge contends that only the *equipment* associated with the CAPTAIN FRANKS was sold to Cargo Transfer on April 17, 1985, not the CAPTAIN FRANKS itself.  In support of its position, TP Barge focuses on the list of movable items transferred in the Act of Sale between Reserve Barge and Cargo Transfer.  These movable items are separated by category.  The CAPTAIN FRANKS is listed under the category of "Other Barges," along with six other movables.  (R. Doc. 79, Ex. E.)  Five of those movables are described with barge-like dimensions and the sixth is described as a "rigging barge."  (*Id.*)  The CAPTAINS FRANKS, in contrast, is described without dimensions and is not

---

[3] Plaintiff insists that it only expropriated one parcel of the Batture Property.  Whether Plaintiff purchased the entire Batture Property, however, is irrelevant for the purpose of deciding the instant Motion.

referred to as a "barge:" "CAPTAIN FRANKS – 3 – 17" square spuds x 40.'" (*Id.*)  According to TP

Barge, this unique description demonstrates that Cargo Transfer did not purchase a barge or

watercraft but instead purchased three, 40-foot long, 17-inch square spuds associated with the

CAPTAIN FRANKS.  Indeed, TP Barge's President confirmed this interpretation in his affidavit (R.

Doc. 79, Ex. D ¶5), as did TP Industries' President in his deposition (*id.* at Ex. B., p. 78, lns. 7–11).

Plaintiff offers three arguments in response.  First, it notes that Cargo Transfer subsequently

insured some of the movable items transferred in the sale.  The memorandum of insurance lists

the CAPTAIN FRANKS under the category "Floating Dock consisting of the following *barges*."  (R.

Doc. 90, Ex. 14) (emphasis added).  Furthermore, the items listed under this category are described

as "*vessels* [that] are tied up forming a floating wharf."  (*Id.*) (emphasis added).  Second, the

CAPTAIN FRANKS is listed under the category of "Other Barges"—if the CAPTAIN FRANKS consisted

merely of three spuds, it probably would have been listed in a different part of the Act of Sale

where miscellaneous types of movable property are described.  (*See* R. Doc. 79.)  Third, three of

the four barges listed under the category of "Crane Barges" also do not contain barge-like

dimensions.  (*Id.*)

The Court finds that Plaintiff raises a genuine issue of material fact as to whether Cargo

Transfer purchased a barge named "CAPTAIN FRANKS" from Reserve Barge.  Accordingly, summary

judgment on this issue is denied.

B. *Whether Cargo Transfer Sold the CAPTAIN FRANKS to TP Barge*

Even if Cargo Transfer purchased the CAPTAIN FRANKS, TP Barge contends that it did not purchase the CAPTAIN FRANKS from Cargo Transfer.  As Plaintiff does not have a witness who can testify as to the movable property transferred from Cargo Transfer to TP Barge (R. Doc. 90-3 at ¶17), Plaintiff concedes that the sale documents are the only proof it can offer (R. Doc. 79, Ex. C). The parties acknowledge that the list of movable property transferred in the Reserve Barge-Cargo Transfer sale is identical to that contained in the Cargo Transfer-TP Barge sale.  (R. Doc. 90-3 ¶7.) TP Barge notes, however, that the latter sale contains limiting language not found in the former: "[A]ll property is being transferred to the extent it is still in existence and located on the premises, and no warranties as to its existence or condition is being conveyed to purchaser."  (R. Doc. 79, Ex. G.)  TP Barge also notes that although the same property was allegedly transferred in each sale, Cargo Transfer paid $750,000 (*id.* at Ex. E) whereas TP Barge only paid $500,000 (*id.* at Ex. G).  TP Barge argues that the only plausible explanation for this difference in price, given the limiting language in the Cargo Transfer-TP Barge sale and Plaintiff's admission that it does know when the CAPTAIN FRANKS sank (R. Doc. 90-3 ¶4), is that the CAPTAIN FRANKS was *not* in existence at the time of the sale and therefore was not transferred.  Indeed, TP Barge's President stated in his affidavit that TP Barge did not purchase a barge or watercraft named "CAPTAIN FRANKS" from Cargo Transfer.  (R. Doc. 79, Ex. D ¶4.)

Plaintiff counters that the limiting language to which TP Barge refers is misleading when read in isolation from the rest of the Act of Sale.  Indeed, the next clause of the sentence in which

23

the limited language is found reads as follows: "Purchaser having inspected all property being conveyed herein and is satisfied with the condition and/or existence of the same."[4]  (R. Doc. 79, Ex. G.)  Thus, a plausible reading of the Act of Sale is that TP Barge covenanted that it inspected all property listed in the sale documents—including the CAPTAIN FRANKS—and was satisfied that such property existed, notwithstanding Cargo Interest's disclaimer of warranty.  The plausibility of such reading is buttressed by Plaintiff's explanation of the differing purchase prices in the two sales: in addition to selling the Batture Property and moveable property, Cargo Transfer also purchased 26 leases.  (R. Doc. 90, Ex. E.)  The Cargo Transfer-TP Barge Act of Sale does not contain a similar provision.

At the summary judgment stage , it is not for this Court to decide whose interpretation of the Act of Sale between Cargo Transfer and TP Barge is better.  Rather, the existence of competing, reasonable interpretations of the contract creates a material fact issue concerning the parties' intent that precludes the entry of summary judgment.  *See Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 794 (5th Cir. 2010) (citation omitted).

IV.    Motions to Dismiss or for Adverse Inference Due to Spoliation of Evidence filed by TP

---

[4] The pertinent portion of the limiting language reads in full as follows:
> "[A]ll property is being transferred to the extent it is still in existence and located on the premises, and no warranties as to its existence or condition is being conveyed to [P]urchaser, Purchase[r] having inspected all property being conveyed herein and is satisfied with the condition and/or existence of the same."

(R. Doc. 79, Ex. G.)

Industries and Augustine (R. Doc. 75) and TP Barge (R. Doc. 83)

Since all claims against TP Industries and Augustine in his personal capacity have been dismissed, their spoliation Motion is denied as moot. TP Barge, however, filed an identical Motion and adopted by reference the arguments of TP Industries and Augustine. Thus, in order to rule on TP Barge's Motion, the Court necessarily passes upon the validity of the spoliation Motion filed by TP Industries and Augustine.

The parties do not dispute that the CAPTAIN FRANKS was destroyed by Plaintiff's sub-contractor some time after it was raised from the riverbed on March 4, 2011. Based on this conduct, TP Barge moves to dismiss this matter in its entirety, or alternatively for an order excluding all visual evidence of the CAPTAIN FRANKS and an instruction to the jury that TP Barge is entitled to an adverse inference. Plaintiff counters that the Motion should be denied because TP Barge fails to allege that Plaintiff acted in bad faith, as required by Fifth Circuit precedent. For the following reasons, the Court agrees with Plaintiff and denies the Motion.

The spoliation of evidence doctrine concerns the intentional destruction of evidence. *Lafayette Ins. Co. v. CMA Dishmachines*, No. Civ.A. 03–1098, 2005 WL 1038495, at *3 (E.D. La. Apr. 26, 2005). If a party intentionally destroys evidence, the trial court may impose sanctions on the responsible party. *Savarese v. Pearl River Navigation*, No. 09–129, 2010 WL 1817758, at *2 (E.D. La. Apr. 30, 2010). Such sanctions may include an instruction to the jury that the evidence was spoiled because it was unfavorable to the spoiling party's case, exclusion of the spoiled evidence,

25

or dismissal of the entire case. *Lafayette*, 2005 WL 1038495 at * 3. Exclusion of evidence, much less dismissal of the case, "is a 'drastic sanction' that courts generally try to avoid." *Id.* The preferred alternative is an adverse inference in favor of the non-spoiling party. *Savarese*, 2010 WL 1817758 at *3. The decision to admit evidence of spoliation and to instruct the jury on adverse inferences is within this Court's sound discretion. *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000)

In the Fifth Circuit, a spoliation claim has three elements. First, the spoiling party must have controlled the evidence and been under an obligation to preserve it at the time of destruction. *Menges v. Cliffs Drilling Co.*, No. Civ.A. 99–2159, 2000 WL 765082, at *2 (E.D. La. June 12, 2000). Such a duty arises when a party knows or should have known that the spoiled evidence was relevant to current or future litigation. *Hunt v. Marquette Transp. Co. Gulf-Inland, LLC.*, No. 09–6055, 2011 WL 3924926, at *2 (E.D. La. Aug. 5, 2011). Second, the evidence must have been intentionally destroyed. *Lafayette*, 2005 WL 1038495 at *3. Negligent destruction of evidence is not enough. *Vick v. Texas Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975). Third, the moving party must show that the spoiling party acted in bad faith. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (citing *King v. Illinois Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)); *Wise*, 221 F.3d at 156. The burden of proving bad faith lies with the moving party. *Lafayette*, 2005 WL 1038495, at *4 (citing *King*, 337 F.3d at 556).

The instant Motion is denied because TP Barge has failed to carry its burden of

26

demonstrating that Plaintiff acted in bad faith when the CAPTAIN FRANKS was destroyed.  Indeed, TP Barge does not even allege (much less prove) Plaintiff's bad faith in the instant Motion or supporting memoranda.  Rather, TP Barge focuses on proving that Plaintiff intentionally destroyed the CAPTAIN FRANKS.  But "a party seeking sanctions is not even entitled to an adverse inference unless that party can show that its adversary intentionally *and in bad faith* disposed of the evidence." *Savarese*, 2010 WL 1817758 at *3 (emphasis added).

The record does not reveal any evidence of Plaintiff's bad faith.  Plaintiff's Rule 30(b)(6) representative stated that it did not occur to Plaintiff to ask its general contractor or sub-contractor to preserve the CAPTAIN FRANKS.  (R. Doc. 85, Ex. 17, p. 165, lns. 19–25.)  Moreover, Plaintiff took multiple photographs of the CAPTAIN FRANKS before it was destroyed.  (*See id.* at Ex. 12.)  Finally, the Court notes that the destruction of the CAPTAIN FRANKS prejudiced Plaintiff's ability to prove its negligence claims against Defendants as much as it prejudiced Defendants' ability to defend against such claims.

An inference of bad faith is simply too great an analytical leap for this Court to make based on the record before it.  Accordingly, the instant Motion is denied.

V.    <u>Motion for Sanctions filed by TP Industries and Augustine</u> (R. Doc. 66)

TP Industries and Augustine move this Court for an order sanctioning Plaintiff and its counsel for asserting claims—specifically those contained in paragraphs 5 and 10 of Plaintiff's Complaint— in violation of Rule 11(b)(3).  TP Industries and Augustine contend that the record is

27

completely devoid of any evidence in support of the challenged allegations.  Plaintiff counters that sanctions are inappropriate because Rule 11 only requires that Plaintiff's counsel undertake a reasonable factual inquiry before filing a pleading.  Alternatively, Plaintiff argues that its factual allegations find support in the record.  For the following reasons, the Motion is denied.

Rule 11(b)(3) provides that by presenting a pleading, written motion, or other paper to the court, an attorney certifies that to the best of his "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).  The Court judges a party's compliance with Rule 11 by "an objective standard of reasonableness under the circumstances."  *Jennings v. Joshua Indep. Sch. Dist.*, 948 F.2d 194, 197 (5th Cir. 1991) (citations omitted).  "Reasonableness is reviewed according to the 'snapshot' rule, focusing upon the instant the attorney fixes his signature to the document."  *Smith v. Our Lady of the Lake Hosp., Inc.*, 960 F.2d 439, 444 (5th Cir. 1992) (quoting *Thomas v. Capital Sec. Servs.*, 836 F.2d 866, 873 (5th Cir. 1988) (en banc)).  In determining whether an attorney has complied with Rule 11(b)(3), this Court may consider a number of factors such as: (1) the time available to counsel for investigation; (2) the extent to which counsel relied upon his client for factual support for the document; (3) the feasibility of conducting a pre-filing investigation; (4) whether counsel accepted the case from another member of the bar or forwarding attorney; (5) the complexity of the factual and legal

issues; and (6) the extent to which development of the factual circumstances underlying the claim require discovery. *See Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1026 (5th Cir. 1994) (citations omitted); *Smith*, 960 F.2d at 444. This Court has broad discretion in deciding whether to issue sanctions under Rule 11. *See Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993).

Despite acknowledging the Fifth Circuit's "snapshot" rule—which requires this Court to assess the reasonableness of Plaintiff counsel's factual inquiry prior to filing his Complaint—TP Industries and Augustine focus exclusively on post-Complaint developments. TP Industries and Augustine essentially rehash their summary judgment motions by arguing that the record is so lacking in evidentiary support for Plaintiff's allegations that Plaintiff's counsel could not possibly have made the pre-Complaint factual inquiry required by Rule 11(b)(3). Yet this argument misses the point by looking past "the instant the attorney fixes his signature to the document." *Cf. Smith*, 960 F.2d at 444. This Court will not allow TP Industries and Augustine to bootstrap the instant Motion to their motions for summary judgment.

In sum, given the lack of evidence regarding the reasonableness of Plaintiff counsel's factual inquiry prior to filing the Complaint, this Court will not impose sanctions under Rule 11(b)(3). Accordingly, the Motion for same is denied.

## CONCLUSION

For the reasons previously stated, the Motion to Dismiss and for Partial Summary Judgment

29

filed by TP Industries and Augustine (R. Doc. 44) is granted in part and denied in part.  The Motion

for Partial Summary Judgment filed by TP Industries and Augustine (R. Doc. 71) is  granted in part

and denied in part.   All claims against TP Industries and Augustine in his personal capacity are

dismissed.  The claims against Augustine in his capacity as an alleged "alter ego" of TP Barge shall

remain pending.  The Motion for Summary Judgment filed by TP Barge (R. Doc. 79) is denied.  All

claims against TP Barge shall remain pending.  The Motions to Dismiss or for Adverse Inference Due

to Spoliation of Evidence filed by TP Industries and Augustine (R. Doc. 75) is denied as moot.  The

Motion to Dismiss or for Adverse Inference Due to Spoliation of Evidence filed by TP Barge (R. Doc.

83), and the Motion for Sanctions filed by TP Industries and Augustine (R. Doc. 66) are denied.


New Orleans, Louisiana, this 26th day of February, 2013.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**